[File No. 6954]

H. B. BAEVERSTAD, Appellant, v. FREDERIC P. REYNOLDS, as Trustee of the Last Will and Testament of Charles Grandison Reynolds, Deceased, and V. C. O'Reilly, Respondents.

(18 NW(2d) 20)

Opinion filed February 24, 1945

*Lloyd Stevens,* for appellant.

*Sinness & Duffy,* for respondents.

606

BURR, J.   Prior to 1931, C. J. Lord was the owner of the W½ of the NE¼ of Section 28, twp. 158, range 66 in Towner County.   The taxes levied for 1931 became delinquent and the land was sold to the county in December, 1932, and a tax sale certificate issued.

On or about September 1, 1932, the owner mortgaged the land to the Security-First National Bank of Los Angeles as trustees under the last will and testament of Charles Grandison Reynolds, and the mortgage was recorded October 5, 1932.

It is stipulated that subsequent taxes were levied against this property as follows:

| | |
|---|---|
| 1931—$49.20 | 1935—$38.68 |
| 1932— 42.72 | 1936— 28.26 |
| 1933— 33.78 | 1937— 34.30 |
| 1934— 37.04 | 1938— 32.66 |

and that the county auditor "in preparing the notice of expiration of the period of redemption  .  .  .   added to the face of those taxes the interest and penalty accrued to the time of the notice with the result that the taxes as therein computed were as follows:

1931 $83.79; 1932 $58.13; 1933 $43.87; 1934 $45.80; 1935 $45.-43; 1936 $31.44; 1937 $35.85, making a total of $344.31." There is some confusion in the stipulation as to the taxes levied in 1938, so we do not consider them.

On January 10, 1939, the county auditor issued a notice of expiration of the time of redemption from tax sale, the notice stating: "There is given herewith the descriptions of such parcels of real estate, and set opposite each description is the amount which will be required upon the date of the expiration of the period of redemption to redeem such real estate from such tax sale exclusive of the cost of serving this notice personally upon the owner and the person in possession thereof."

This was served personally upon the plaintiff in this case as the occupant of the land in question, and on Vine Lord, the administrator of the estate of C. J. Lord. A notice similar in character was published in January, 1939, and set forth a description of the land involved here, the name of the title owner, and the amount required to redeem, as follows:

Cando Township

Township 158—Range 66

| Title Owner | Sec. or Block | Amount reqd. to Redeem |
|---|---|---|
| C. J. Lord, W½ NE¼ | 28 | 344.31 |

This notice varied in many respects from the notice served upon the administrator and then on the occupant of the land and also added thereto the statement that the amount set opposite the description of the tract sold, as the amount that would be required to redeem from the tax sale, included "the amount for which the said land was sold, interest and penalty thereon, subsequent delinquent taxes *prior to those of the year 1938,* and the penalties and interest thereon."

It is stipulated as follows: "That exhibit 3 is a certified copy of the original notice of the expiration of the period of redemption in connection with the tax deed proceedings upon which the tax deed exhibit 2 was issued and that this is the only notice served in connection with the tax deed proceedings; that service was made as shown

on the back of the certified copy exhibit 3, and in addition thereto service was made by registered mail on the defendant Frederic P. Reynolds and upon the Security First National Bank of Los Angeles, who is the original trustee in the mortgage upon which Mr. Reynolds obtained a sheriff's deed, which will later be offered in evidence; and exhibits 3A and 3B are receipts signed by the Bank of Mr. Reynolds for copies of the Notice of expiration of the period of redemption, and the service as made as shown on the exhibits plus service by registered mail as stipulated constitutes the entire service that was made, and that in addition thereto the notice of expiration of the period of redemption was published in the Cando Herald on January 26–1939 as shown by exhibit 4 now offered."

The mortgage was foreclosed February 7, 1940, and certificate of sale issued to the defendant.

The county presented its tax sale certificate to the auditor, demanding a deed, and on October 1, 1940, the auditor issued a tax deed reciting that the deed was made by him as county auditor to Towner County, a municipal corporation; that the land had been sold to the county at tax sale for the sum of $52.55 and a tax sale certificate was issued to the county, that the time fixed by law for redeeming from the tax sale had expired, that no redemption had been made, and that the taxes with interest and penalty and cost now amounted to $346.62.

December 5, 1940, the county sold this land to the plaintiff herein, giving a deed which recited that it was made "between the County of Towner, North Dakota, party of the first part, acting by and through the Chairman of its Board of County Commissioners and its County Auditor, and H. B. Baeverstad, Cando, N. D., party of the second part."

It recited that the property had been offered for sale November 19, 1940, "and no bid was received for same and said second party became the purchaser of the whole thereof for the sum of Six Hundred and no/100 Dollars." It is stipulated plaintiff "is in possession of the land and using it for whatever purposes it is usable for."

February 13, 1941, the sheriff's deed to said property was issued to the defendant.

In July, 1941, the plaintiff commenced this action to quiet title to

the land in himself. He alleged that the defendant's claimed estates and interest therein were adverse to him and asked that the same be adjudged null and void.

The defendant, as the trustee of the last will and testament of Reynolds, answered, setting forth that he was the purchaser at the foreclosure proceedings and had received the sheriff's deed. The answer further alleges that the county took a tax deed to the land without giving the defendant an opportunity to redeem according to law, and that the notice of the expiration of the period of redemption "did not specify the proper or correct amount which was required to prevent the said lands from going to tax deed . . . the public officials . . . gave public notice which specified amounts greatly in excess of those amounts which were legally required to be paid to effect such redemption." It further alleges that the sale made to the plaintiff herein "was in all things irregular and void." He alleges the land was excessively assessed and taxed and asks the court to determine the proper amount of taxes which should have been legally charged as taxes. There are other allegations not necessary to set forth.

We are not concerned with the allegations that the land had been excessively assessed and taxed, nor with the demand that the court determine the proper amount of tax which should have been levied. The county is not a party to this action, nor are its interests in the land under the tax deed or the tax proceedings affected.

The plaintiff replied on November 1, 1941, alleging among other things that defendant had not made a deposit with the clerk of the court of an amount equal to what the plaintiff had paid to the county for the land, to wit: six hundred dollars.

On February 3, 1942, the plaintiff moved the court "for an order requiring the defendant to deposit with the Clerk of the above named court, . . . the sum of $600.00, the amount paid by plaintiff to the county for the purchase of the property described in the complaint, together with an amount sufficient to pay the plaintiff's statutory costs of the action."

On February 19, 1942, the plaintiff made an amended reply alleging failure to make this deposit of six hundred dollars and that the tax title of the county "was based upon taxes for the years 1931, 1932,

1933, and 1934," and that the county "acquired such title on October 1, 1940."

After the hearing on this motion to require a deposit, an order was made on March 24, 1942, requiring the defendant to make a deposit of an amount "sufficient to cover the unpaid taxes against this land to date together with penalty, interest and all subsequent taxes paid and interest thereon together with all costs and expenses connected with the tax proceeding not to exceed Six Hundred Dollars; that he should also pay into the Court as his deposit a reasonable amount to cover costs which amount is hereby fixed at Twenty-five Dollars to cover said costs and disbursements." It is stipulated that at this hearing the taxes with penalty and interest were computed to March 26, 1942, and it was found these amounted to $521.55 and thereafter the court required a deposit of this amount, and of $25.00 to cover costs—$546.55 in all— and this amount was deposited. There is nothing in the record to show any exception taken by the plaintiff as to the amount fixed by this order upon his motion.

It is stipulated that on December 1, 1941, the defendant tendered to the county auditor a certified check in payment of the taxes on the land in the sum of $452.45, which was rejected. There is no dispute but what this sum was ample to cover all of the taxes assessed against that land and due up to that time, with penalty and interest, and no exception is taken to the fact that the offer was made by means of a certified check, the only objection being that it was immaterial.

Upon trial, the court found for the defendant, concluding:

"That no sufficient notice of the expiration of the period of redemption from the tax sale of said premises was ever given or served; that said notice did not substantially comply with the law and did not substantially set forth the amount required to redeem; that the tax deed issued to Towner County is void.

"That the defendant Frederic P. Reynolds as trustee under the last will and testament of Charles Grandison Reynolds, deceased, is entitled to redeem the said premises upon payment of the amount of the taxes from 1931 to 1939, inclusive; that the value of the use and occupancy of said premises by the plaintiff offsets the taxes against the said premises for the years 1941, 1942 and 1943."

The order for judgment required:

"That the Clerk of this Court, out of the moneys deposited by the defendant, Frederic P. Reynolds, as trustee under the last will and testament of Charles Grandison Reynolds, deceased, shall pay the taxes upon said land for the years 1942 and 1943 if the same shall not have been paid by the plaintiff.

"That the clerk from said funds, shall pay to the plaintiff the sum of Four Hundred Eighty One and 82/100 Dollars, less such amount as he shall be required to pay under Paragraph I of this order.

"That upon making such payment the title of the defendant, Frederic P. Reynolds, as trustee under the last will and testament of Charles Grandison Reynolds, deceased, to said premises be quieted and that the plaintiff be adjudged to have no title to nor interest in or lien or encumbrance upon the said premises and that the tax deed to Towner County and the deed from Towner County to the plaintiff be adjudged null and void.

"That any surplus remaining in the hands of the clerk from the deposit aforesaid be refunded to the defendant, Frederic P. Reynolds, as trustee under the last will and testament of Charles Grandison Reynolds, deceased."

From the judgment entered in conformity therewith, the plaintiff appeals, specifying errors of law only and demanding a "re-examination and review of the questions involving such errors of law and a retrial in the Supreme Court of the case as provided by law, in so far as a re-examination and review and retrial of the questions involving such errors of law require."

These errors of law are set forth as follows:

"1. The right of the Court to grant any relief to the respondent without first requiring him to deposit with the Clerk an amount equal to the purchase price paid by the appellant with costs as per statute.

"2. Sufficiency of the notice of expiration of period of redemption.

"3. If the notice is defective, then the amount the respondent is required to pay."

With reference to the first specification of error, the majority of the court, not including the writer, determines that this provision of

§ 21, chap 286 of the Sess. Laws of 1941, to wit: "That whenever any action at law or in equity is brought to test the validity of any deed issued and delivered by the county to the purchaser of lands acquired through tax deed proceedings, the Court shall not proceed with the trial of such action until the party assailing the validity of such deed, shall, within the time required by the Court, deposit with the Clerk thereof, for the benefit of the party claiming title under such deed, an amount equal to the sum paid by such party to the county for the purchase of the property covered by such deed, together with an amount sufficient to pay the defendant's statutory costs of the action, to be determined by the order of the Court," applies to the case at bar and that therefore the defendant should have been required to deposit the sum of six hundred dollars for the benefit of the plaintiff. We have had occasion to consider a somewhat similar provision in chap 235, Sess. Laws 1939 (Messer v. Henlein, 72 ND 63, 68, 4 NW(2d) 587, 590) and therein show that such a provision "merely provides that the action shall not proceed" until the one assailing the deed makes the required deposit. This rule applies to the case at bar.

Such requirement is not a jurisdictional prerequisite. The statute is for the benefit of the one claiming under the deed. He need not demand a deposit, nor require the entire amount to be deposited, and he could have waived the entire deposit had he seen fit.

The plaintiff, in his reply of November 1, 1941, alleged no deposit had been made; but at that time no deposit had been required by him and the case was not on trial then. February 2 thereafter the plaintiff applied to a judge of the district court for an order requiring a deposit of six hundred dollars and on February 19 thereafter made an amended reply, reiterating failure to make the deposit. March 24, this judge fixed the amount to be deposited at $521.55 which sum was deposited. October 28 thereafter the case came on for trial before a judge other than the one who heard the motion. The plaintiff did not call the attention of the trial court to the amount actually deposited. He did not ask the court not to hear defendant's counterclaim until a further deposit was made. Even if the trial court knew as a fact that only $521.55 had been deposited, he had a right to assume this was satisfactory to the plaintiff. This court holds the plaintiff acquiesced in the

amount that was ordered and was deposited and he cannot raise the question now.

As shown by Kelsch v. Miller, ante, 405, 15 NW(2d) 433, 155 ALR 1186, the amount which the redemptioner would be required to pay in order to redeem would be the amount for which the land was sold—that is, the taxes for 1931 and costs—and the amount due on all subsequent tax sale certificates due to the county, provided these subsequent certificates had been issued more than three years before the notice of expiration of the period of redemption. The county auditor therefore had the right to include in the notice of the expiration of time of redemption the taxes for the years 1932 to 1934 inclusive. The taxes for the year 1935 would become delinquent in 1936 and therefore would not be delinquent for three years prior to the notice of expiration of the time of redemption.

A subsequent tax sale certificate is deemed issued to the county each year after the first tax sale, for each subsequent year in which taxes become delinquent. Thus, we assume that in addition to the tax sale certificate received by the county in 1932 on the sale for the taxes of 1931 there were tax certificates issued for the taxes levied for the years 1932, 1933, 1934, 1935, 1936, and 1937.

But for taxes which were levied in 1935 and became delinquent in 1936, and for taxes levied in 1936 which would become delinquent in 1937, and for taxes for the year 1937 which would become delinquent in 1938, while tax certificates would be issued to the county, the redemptioner would have the right to redeem from them any time up to three years from the time of the issuance of these tax certificates. He had the right to insist on partial redemption and make subsequent redemption on these later certificates of sale. Thus he would not be required to pay for any delinquent tax subsequent to the tax of 1934 which became delinquent in 1935. We need not quote from this case cited. We follow the rule set down therein.

The notice which was served upon him as shown by the record included the taxes for the years 1935, 1936, and 1937, and there was nothing in the notice showing their amount so as to inform defendant of the true amount necessary for redemption. He is entitled to know from the notice the amount of delinquency for each year as the term

"delinquent taxes" implies in such case as this taxes on which certificates had been issued for more than three years prior to the service of the notice.

The amount specified in the notice, under the stipulated facts, included subsequent taxes for which tax sale certificates were issued, and for which the rights of redemption had not expired so as to entitle the county to deed or deeds. A defect which vitiates the notice of expiration of redemption, so as not to acquaint the redemptioner with the proper amount necessary to redeem, renders the tax deed issued thereon void. See Hodges v. McCutcheon, 72 ND 150, 5 NW(2d) 83.

The court was correct in holding that the defendant did not have proper notice and as the statutory requirements with reference to notice of the expiration of time of redemption must be followed strictly (Messer v. Henlein, supra) we hold the notice invalid and therefore the tax deed was void.

The third proposition set forth as an issue of law deals with the amount which the defendant is required to pay. As pointed out, the defendant was required to deposit with the clerk of the court for the benefit of the plaintiff $521.55, instead of the $600.00 which the plaintiff had paid to the county, or $78.45 less than the amount demanded by the plaintiff. In view of the holding of this court that the plaintiff has waived the deposit of this extra $78.45, we determine merely the status of the $521.55 that was deposited.

The fact that the judge, who ordered the deposit, proceeded on the theory the plaintiff could recover only the amount of taxes that were due at the time the county sold the land to him with interest and penalty is not controlling. In the view of the majority of the court, not including the writer, the plaintiff is entitled to the deposit even though he failed to show any valid deed, as the defendant by his counterclaim assailed the validity of the deed and this deposit is required to reimburse the plaintiff for what he paid to the county. Therefore, the plaintiff is entitled to the full amount of the $521.55 deposited. The trial court required the clerk to pay but $481.82. The judgment should be amended in this respect and the clerk be required to pay the whole sum to the plaintiff.

The trial court, as a pre-requisite to judgment for the defendant, re-

quired the defendant to pay the unpaid taxes upon the land for the years 1942 and 1943, this to be paid out of the deposit. The defendant has not appealed and so the requirement of the district court that he pay the taxes before having title to the land quieted in him is affirmed. However, this payment is not to be made out of the deposit. It is an extra payment to be paid to the county on taxes due.

The district court, in computing the amount of deposit which the defendant would be required to make under the provisions of chap. 286 of the Sess. Laws of 1941, included the amount of twenty-five dollars which the defendant was required to deposit to cover the statutory costs to which the plaintiff would be entitled if he recovered judgment. The trial court found that the plaintiff had no title to or interest in the land; hence his action would be dismissed. This judgment being affirmed, the defendant is entitled to the return of this amount, as plaintiff can not recover statutory costs on the trial of his case.

But the plaintiff, having received a substantial benefit by his appeal over the counterclaim of the defendant, is entitled to costs in this court. The clerk of the district court therefore will compute and enter defendant's costs upon the trial in the lower court, and also enter judgment for the plaintiff for the statutory costs upon the appeal. If appellant's costs, to which he is entitled, exceed those to which the respondent is entitled, then the deposit of twenty-five dollars will go to the appellant and judgment will be entered against the defendant for the remainder. If respondent's costs exceed those of appellant, then the amount of the appellant's costs as entered will be deducted from the twenty-five dollars and the remainder will be returned to the respondent.

As thus modified, the judgment of the district court is affirmed.

NUESSLE and MORRIS, JJ., concur.

CHRISTIANSON, Ch. J. (Concurring specially and dissenting in part.) I concur in the principles stated in paragraphs 3, 4, 5, and 6 of the syllabus and in those portions of the opinion prepared by Judge BURR to which those paragraphs relate.

I do not agree, however, with those portions of the opinion relating to the order of the Trial Court requiring the Defendant to make a de-

posit. In my opinion the provisions of § 21, chap 286, Laws 1941 requiring a deposit in certain cases do not apply to this case, and the order of the Trial Court requiring a deposit to be made was more favorable to the plaintiff than the law warranted. Chapter 286, Laws 1941 is a comprehensive enactment prescribing the procedure whereby a county may acquire tax deeds for lands that have been sold to it for delinquent taxes. It provides for the forms of notices of expiration of the period of redemption, and for the method of service of such notices. ND Rev. Code 1943, §§ 1–7, §§ 57–2801 to 57–2807.

It provides that after the expiration of the period of redemption, tax deed shall be issued to the county (in the name of the state as grantor) in the same manner as tax deeds are issued to individual purchasers at tax sales. Laws 1941, chap 286, § 9; ND Rev Code 1943, § 57–2801; Buman v. Sturn, ante, 561, 16 NW(2d) 837.

It further provides for the classification and appraisal of such lands, for an annual public sale by the county of lands acquired by it pursuant to tax deed proceedings, for notice of such sale, for the manner of conducting the sale, and terms of the sale. Laws 1941, chap 286, §§ 10–14, ND Rev Code 1943, §§ 57–2810 to 57–2815.

The statute also prescribes the form of deed which the county shall execute and deliver to the purchaser. Laws 1941, chap 286, § 15; ND Rev Code 1943, § 57–2816.

The statute further provides for the sale at private sale of parcels of land that were offered, but not sold, at such public sale. Laws 1941, chap 286, §§ 17–18; ND Rev Code 1943, §§ 57–2817, 57–2818.

It also provides that the former owner or his successor in interest shall have the right to re-purchase real estate forfeited to the county under tax deed proceedings, "so long as the tax title thereto remains in the county." Laws 1941, chap 286, § 19; ND Rev Code 1943, § 57–2819.

The statute further provides: *"Whenever any action at law or in equity is brought to test the validity of any deed issued and delivered by the county to the purchaser of lands acquired through tax deed proceedings,* the court shall not proceed with the trial of such action until the party assailing the validity of such deed shall within the time required by the Court deposit with the Clerk thereof for the ben-

efit of the party claiming title under such deed, an amount equal to the sum paid by such party to the county for the purchase of the property covered by such deed, together with an amount sufficient to pay the defendant's statutory costs of the action, to be determined by the order of the Court." Laws 1941, chap 286, § 21; ND Rev Code 1943, § 57–4510.

The above quoted section does not refer to the tax deed from the state to the county but to the *"deed issued and delivered by the county to the purchaser of lands acquired through tax deed proceedings."* This language is clear and certain. It is too clear to be misunderstood, and too certain to be susceptible of any interpretation other than the one which the language obviously indicates. It is not by any possibility open to the charge of ambiguity, indefiniteness, or obscurity.

"It must be presumed that the legislature intended all that it said, and that it said all that it intended to say. The legislature must be presumed to have meant what it has plainly expressed. 2 Lewis' Sutherland, Statutory Construction, 2d ed p 701. It must be presumed, also, that it made no mistake in expressing its purpose and intent. 26 Am. & Eng. Enc. Law, 2d ed p 653. Where the language of a statute is plain and unambiguous the 'court cannot indulge in speculation as to the probable or possible qualifications which might have been in the mind of the legislature, but the statute must be given effect according to its plain and obvious meaning, and cannot be extended beyond it.' 59 CJ pp 955–957." Dickinson v. Thress, 69 ND 748–755, 290 NW 653.

"Courts only determine by construction the scope and intent of a law when the law itself is ambiguous or doubtful. If a law is plain, and within the legislative power, it declares itself and nothing is left for interpretation. It is as binding upon the court as upon every citizen." 2 Lewis' Sutherland, Stat Constr 2d ed p 706.

"It is not allowable to interpret what has no need of interpretation. To attempt to do so would be to exercise legislative functions." 2 Lewis' Sutherland, Stat Constr 2d ed p 702; McKay v. Fair Haven & W. R. Co. 75 Conn 608, 611, 54 A 923, 924.

" 'There is no safer or better settled canon of interpretation than that when language is clear and unambiguous it must be held to mean

what it plainly expresses.'" 2 Lewis' Sutherland, Stat Constr 2d ed pp 701, 702.

The statute involved in this case says plainly that it is only in an action "brought to test the validity of any deed issued and delivered by the county to the purchasers of lands acquired through tax deed proceedings" that a deposit shall be required. Obviously, controversies may arise as to the validity of such deed, as for instance, in situations like that disclosed in Dockter v. Sheridan County, 72 ND 607, 10 NW(2d) 485, where the question arose as to whether the bidder at the public sale had acquired rights as a purchaser or whether the bid which he had made was rendered ineffective because of failure to make timely payment, so that no contract resulted, and the county still retained whatever interest it had in the land and, hence, had the right to sell the same to another party at private sale.

The statute provides for two different deeds: (1) The deed *to the county* for the land acquired by the county pursuant to tax deed proceedings; and (2) The deed *from the county* to a purchaser of the land which the county has acquired through tax deed proceedings. These are different contracts, between different parties. The deed from the state to the county is one thing and the deed by the county to one who purchases from it is quite another. The validity of one is not dependent upon the validity of the other. The validity of a deed is not dependent upon whether there are defects in the grantor's title to the property conveyed. The right of the county to sell lands to which it has acquired tax title is not dependent upon whether the deed which the county has received is valid. The deed from the county to the purchaser, if executed and delivered as prescribed by the law, is valid and will convey all the interest that the county has in the land, even though the tax deed from the state to the county is invalid. Buman v. Sturn, ante, 561, 16 NW(2d) 837. See also State ex rel. McKenzie v. Casteel, 110 Ind 174, 181, 182, 11 NE 219, 223.

As applied to a deed or other contract "valid" means "of binding force or *legal* sufficiency." Morrison v. Farmers & Traders' State Bank, 70 Mont 146, 225 P 123, 125; Bouvier's Law Dictionary. "A deed, will, or other instrument, which has received all the formalities required by law, is said to be valid." Black's Law Dictionary. Web-

ster's New International Dictionary says that in the nomenclature of the law "validity" means: "Legal strength, force, or authority; that quality of a thing which renders it supportable in law or equity; legal sufficiency; as, *validity* of a will, contract." The term "validity of a will" includes "only questions of the genuineness of the instrument and the testamentary capacity of the testator, including his freedom from all restraint and undue influence, and not questions as to the operation of the will." Black's Law Dictionary, 3d ed p 1797.

The provision for a deposit originated in chapter 235, Laws 1939. That statute related to and prescribed the proceedings to be had, the notices of expiration of the period of redemption to be issued and served, in tax deed proceedings as to lands that had been bid in by the county for delinquent taxes, and for the sale of lands acquired by the county pursuant to proceedings had under the statute. That statute also prescribed the form of deed to be executed and delivered by the county to purchasers of lands which the county had acquired pursuant to such tax deed proceedings, and provided that, whenever in any action at law or in equity, the validity of any such "deed is questioned, upon the pleadings or otherwise, such action shall not proceed until the party assailing such deed shall within such time as the court shall deem reasonable deposit in court for the benefit of the party claiming thereunder, an amount equal to the sum paid by said party to the county for the purchase of the property" covered by the deed together with costs and disbursements of the action then incurred by the party claiming under such deed. Laws 1939, p 298. This provision in the laws of 1935 was expressly repealed by Laws 1941, chapter 286, § 23, and in place thereof, there was inserted in said chapter 286 the above quoted § 21. It will be noted that there is a striking difference between the provisions of § 21, chapter 286, Laws 1941 and the provisions relating to the same matter in chapter 235, Laws 1939. Under the 1939 law, the requirement for a deposit became applicable whenever in any action the validity of the deed was "questioned, upon the pleadings or otherwise;" but under § 21, chapter 286, Laws 1941, the requirement for a deposit is made applicable only "Whenever *any action . . . is brought to test the validity of any deed issued and delivered by the county to the purchaser of lands acquired through tax deed proceed-*

*ings."* In other words, under the 1939 law, the requirement for a deposit was not restricted to an action "brought to test the validity" of a deed; it applied in any action whenever "the validity" of a deed from the county to a purchaser was "questioned, upon the pleadings or otherwise." Under the 1941 law, however, the requirement for a deposit applies only in an action that "is brought to test the validity of any deed issued and delivered by the county to the purchaser."

The character, form and object of an action is to be determined from the essential allegations of the complaint. 1 CJS 1076, 1087. This action does not purport to have been "brought to test the validity of any deed issued and delivered by the county to the purchaser of lands acquired through tax deed proceedings." There are no allegations in the complaint to indicate that the validity of the deed that was issued and delivered by the county to the purchaser is in any manner questioned, nor is the validity of such deed questioned by any allegations of fact in the answer. The answer, however, does question the validity of the tax deed that was executed and delivered to the county, and that deed, as is held in the opinion prepared by Judge BURR, is void.

Section 21, chapter 286, Laws 1941 does not require a defendant in an action to determine adverse claims to make a deposit as a condition precedent to the right to assert as a defense that a tax deed that was executed and delivered to the county is invalid. According to the clear language of the statute, such deposit is required only in an action that is brought to test the validity of a deed given by the county to the purchaser.

BURKE, J. (Dissenting in part.) Before proceeding with the trial of this case the plaintiff moved the trial court to require the defendant to deposit in court a sum equal to the amount that plaintiff had paid to the County for its tax title together with an additional sum for costs to be fixed by the court. This motion rested upon § 21, chapter 286, Laws of 1941, ND Rev Code § 57–4510, which reads as follows: "Whenever any action at law or in equity is brought to test the validity of any deed issued and delivered by the county to the purchaser of lands acquired through tax deed proceedings, the court shall not proceed with the trial of such action until the party assailing the validity of such deed, within the time required by the court, shall deposit with the clerk

thereof, for the benefit of the party claiming title under such deed, an amount equal to the sum paid by such party to the county for the purchase of the property covered by such deed, together with an amount sufficient to pay defendant's statutory costs of the action, to be determined by the order of the court."

The defendant resisted the motion upon the ground that the above section was repugnant to the state constitution. The trial court in effect overruled the motion but required the defendant to deposit in court a sum equal to the amount of the taxes delinquent at the time the county acquired title.

I am satisfied that any attack which challenges the title purported to be conveyed by the county's deed to the purchaser of land acquired through tax proceedings is an attack upon the validity of that deed. "An official sale, an order, judgment, or decree may be regular. ° The whole practice in reference to its entry may be correct, but still invalid for reasons going behind the regularity of its forms. But when we say a judgment, decree, or sale is valid, it fully excludes the idea that it is void for any reason." Sharpleigh v. Surdam (CC) 1 Flipp 472, Fed Cas No. 12,711.

Without taking further exception the plaintiff went to trial on the merits. This act is considered by the majority of the court to be a waiver of the right to specify the ruling of the trial court upon this motion as error on appeal. I do not agree.

In this case the amount paid by the plaintiff for the land was more than the amount of the delinquent taxes and in substituting the amount of the taxes as the measure of defendant's deposit, the trial court denied the plaintiff a substantial right, if the statute is constitutional.

ND Rev Code § 28–1802 provides:

"In all trials in the district court and county court of increased jurisdiction the following matters shall be deemed excepted to:

1. . . . .

2. . . . .

3. An interlocutory order or decision finally determining the rights of the parties or some of them; . . . ."

I think plaintiff protected his record adequately by affirmatively seeking his rights under the statute, that the order denying him the

full protection thereof is deemed excepted to by the provisions of § 28–1802, supra, and that we should consider the specification that this order was error. However, a majority of the court has held otherwise and under the rule adopted I agree with the disposition of the case.